IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| SRA INSURANCE AGENCY, LLC, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| DWIGHT PATRICK HETTINGER, JR. and | ) | |
| THE PALADIN GROUP | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff SRA Insurance Agency, LLC (hereinafter "SRA") files the following Complaint for Damages and Injunctive Relief against Dwight Patrick Hettinger Jr. ("Hettinger") and The Paladin Group ("Paladin") (collectively "Defendants").

**INTRODUCTION**

1. Hettinger became employed by SRA in its Dyersville, Iowa insurance brokerage office in April 2020. He worked as a sales executive ("Producer") selling transportation insurance products to SRA's clients. While employed by SRA, Hettinger received valuable training and experience, had full access to SRA's well-developed and protected resources, and worked intimately with SRA's clients, obtaining valuable and confidential and trade secret information.

2. As a condition of Hettinger's employment by SRA, Hettinger signed a Restrictive Covenants Agreement ("SRA Agreement") wherein, among other reasonable legal obligations, Hettinger agreed not to solicit or service SRA's clients for two (2) years after his employment with SRA ended. A true and correct copy of Hettinger's SRA Agreement is attached hereto as Exhibit A.

1

3. On May 24, 2022, Hettinger submitted his resignation notice to SRA via email, telling his supervisor that he "appreciate[d] the opportunity and experience [SRA] ha[d] given [him] in the past 2 years. . ." and that he "[felt] it [was] time to move on to a different opportunity. . . ."

4. Hettinger left SRA to join a direct competitor insurance brokerage, Paladin, where one of Hettinger's former SRA colleagues, Jaclyn Kramer ("Kramer"), was employed.

5. Less than a year later, the clients Hettinger solicited and serviced on SRA's behalf began leaving SRA; and SRA became aware that SRA's clients had officially changed insurance brokers from SRA to Paladin – Hettinger's new agency.

6. On April 22, 2023, after learning of Hettinger's violations, counsel for SRA sent a formal cease and desist letter to Hettinger, notifying him that SRA had learned information sufficient to demonstrate violations of his SRA Agreement; and requesting that Hettinger provide written acknowledgement that he understood his contractual obligations and would abide by them. Counsel for SRA also requested that Hettinger please confirm that he was not currently soliciting or servicing the accounts of clients that he serviced while employed by SRA. Hettinger ignored these requests.

7. On May 5, 2023, counsel for SRA contacted counsel for Paladin via email to communicate the information SRA had learned concerning Hettinger's violations of his SRA Agreement.

8. On May 19, 2023, counsel for Paladin responded to counsel for SRA, confirming that Hettinger did receive the April 22, 2023 cease and desist letter, and then denying that Paladin had any information about SRA's clients who had been serviced by Hettinger while he was employed by SRA.

9. Shortly thereafter, on May 26, 2023, SRA learned that yet another SRA client left SRA for Paladin. This client submitted a broker of record notice documenting the official change of insurance brokers from SRA to Paladin, naming Kramer as the Producer handling the account. Although Kramer, a former SRA colleague of Hettinger who now also works at Paladin, was identified on the notice, that designation of the Producer was untrue.

10. Rather, the designation of Kramer was Paladin and Hettinger's duplicitous scheme to distance Hettinger from the documented SRA Restricted Client transfer to Paladin, a thinly veiled attempt to do indirectly what Hettinger's SRA Agreement prevented him from doing directly. In truth, Paladin and Hettinger used Kramer as a front for Hettinger's involvement with the Restricted Client because Kramer's Restrictive Covenants Agreement with SRA had recently expired. In fact, it was Hettinger who had the relationship with and had obtained the business of, and serviced that SRA client in 2021—well after Kramer had left SRA's employment to work with Paladin.

11. On May 31, 2023, after receiving notices of additional SRA clients confirming their change of broker from SRA to Paladin, counsel for SRA communicated again with counsel for Paladin to try to seek a resolution. Counsel for Paladin did not substantively respond to such efforts.

12. Hettinger's conduct is in direct violation of valid, reasonable and enforceable restrictive covenants between Hettinger and SRA; and is in violation of multiple laws.

13. Because it is apparent that Hettinger and Paladin intend to refuse to comply with Hettinger's SRA Agreement, and that Hettinger and Paladin intend to continue to compete unfairly with SRA, SRA hereby seeks the assistance of this Court to stop and remedy these violations.

## PARTIES, JURISDICTION AND VENUE

14. SRA is an insurance broker firm that sells a wide variety of insurance services and products, including but not limited to transportation insurance. SRA is a limited liability company organized and existing under the laws of the state of Kansas. SRA is wholly owned by AssuredPartners Capital, Inc., which is incorporated in Delaware with a principal place of business in Florida.

15. Hettinger is a former employee of SRA whose job it was to obtain and service clients on behalf of SRA. Hettinger worked for SRA in Dyersville, Iowa and resides in Manchester, Iowa. Therefore, Hettinger is subject to the jurisdiction of this Court.

16. Paladin is a competitor of SRA. Paladin is a domestic limited liability company in Cedar Falls, Iowa that is registered with the Secretary of State of the State of Iowa with its registered business location as 1501 Technology Parkway Suite 200, Cedar Falls, Iowa, 50613.Therefore, Paladin is subject to the jurisdiction of this Court.

17. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a), which grants district courts original jurisdiction over a civil action in which the matter in controversy exceeds $75,000, exclusive of interest and costs, and that is between citizens of different states. This controversy exceeds the sum or value of $75,000.00 (exclusive of interests and costs) and is between citizens of different states.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to SRA's claims occurred in this District.

## BACKGROUND

19. SRA is a leading provider of insurance products and services, including but not limited to transportation insurance.

20. SRA hires and trains Producers to sell its insurance products and services to its clients. SRA rigorously screens and trains its Producers to ensure that the Producers are qualified to represent and sell its products, have the proper tools to analyze and meet client needs, and can furnish SRA's clients with tailored insurance solutions and services that satisfy the clients' unique insurance needs.

21. SRA expends substantial resources advertising, marketing and promoting its insurance products and services. These expenditures include, among other things, marketing materials, marketing events, and on-and-off-site client events.

22. The training SRA provides, the confidential information belonging to SRA, and SRA's substantial expenditures promoting its products and services enables SRA's Producers to develop and cultivate loyal client accounts and relationships on behalf of SRA. Producers solicit business for SRA, provide quotes and proposals to prospective clients, and, once policies are in place, provide day-to-day support as required by clients. In essence, Producers are the "face" of SRA to its current and future clients.

23. The loyalty SRA Producers generate using SRA's resources and training procures repeat business, including policy renewals, which provide SRA with its competitive advantage in the highly competitive insurance industry.

## FACTS

### Hettinger's Employment With SRA

24. Hettinger became employed by SRA as a Producer on April 6, 2020, in SRA's Dyersville, Iowa office.

25. As a Producer, Hettinger had substantial contact with SRA's clients.

26. Hettinger had access to SRA's Confidential and Trade Secret Information.

27. On April 6, 2020, as a condition of his employment, Hettinger entered the SRA Agreement with SRA.

28. The SRA Agreement expressly prohibits solicitation and interference:

> 3. **Non-Solicitation & Non-Interference**.
>
> (a) During Employee's employment with the Company, Employee shall not induce or attempt to induce, or refer to a third party the purpose of such third party inducing or attempting to induce, any person or entity to purchase an Insurance Product (as defined below) from any entity other than a member of the Employer Group. Furthermore, during the twenty-four (24) month period immediately following the date upon which Employee's employment ends with the Company (whether voluntary or involuntary or with or without cause) (the "Restricted Period"), Employee shall not directly, or indirectly through another person or entity, (each, a "Restricted Activity"):
>
> (i) offer, sell, solicit, quote, place, provide, renew, or service any insurance product, or provide service to, or accept business from, any Restricted Client or anyone acting on behalf of any Restricted Client;[1]
>
> (ii) take any action intended, or reasonably likely, to cause any Restricted Client, or any vendor, insurance carrier, wholesale broker, other client of the Employer Group, or any other third party that, in each case, Employee knows or has reason to know has a business relationship with the Employer Group, to diminish its business with, or cease or refrain from doing business with, the Employer Group; or

(Exhibit A ¶ 3(a)(i) & (ii))

29. The SRA Agreement narrowly defines "Restricted Client":

> (b) Restricted Clients. For purposes of this Agreement, "Restricted Client" means the following:
>
> (i) any client of the Employer Group during the two (2) years immediately preceding the date upon which Employee's employment with the Company ends for any reason: (A) as to which Employee received commission compensation and/or fees; (B) for which Employee had material involvement in proposing, selling, quoting, placing, providing, servicing, or renewing any insurance product or service offered by any person or entity within the Employer Group (each, an "Insurance Product"); or (C) about whom Employee received Confidential Information; or

(Exhibit A ¶ 3(b)(i))

30. Hettinger also agreed that if he did violate the SRA Agreement, that SRA "shall be entitled to injunctive relief and may apply to any court for specific performance, temporary, preliminary, and/or permanent injunctive relief, or other relief in order to enforce such obligations or prevent any breach of such obligations." (Exhibit A ¶ 4)

31. Hettinger further agreed that "in the event of a breach by Employee of the obligations in Restrictive Covenants, the Restricted Period shall be tolled until such breach has been cured." (Exhibit A ¶ 4)

32. Hettinger additionally agreed that SRA would be entitled to attorneys' fees, costs and expenses incurred in enforcing the SRA Agreement. (Exhibit A ¶ 18).

### Hettinger's Resignation and Misconduct

33. Hettinger resigned his employment with SRA on May 24, 2022.

34. In June 2022, Hettinger became employed by Paladin.

35. Paladin is an Iowa insurance broker that is a direct competitor of SRA. Similar to SRA, Paladin sells transportation insurance products, business insurance and offers risk management consulting. Certain SRA former employees, including Kramer, currently work for Paladin as insurance Producers, offering the same services and products to clients and prospective clients that they did while employed by SRA.

36. After Hettinger's resignation, several of SRA's clients that Hettinger had solicited and serviced on SRA's behalf notified SRA that they would no longer be doing business with SRA. Instead, those SRA clients began doing business with Paladin.

37. On April 22, 2023, after learning of Hettinger's violations, counsel for SRA sent a formal cease and desist letter to Hettinger notifying him that SRA had learned information that Hettinger was in violation of his SRA Agreement; and requesting that Hettinger provide written acknowledgement that he understood his contractual obligations and would abide by them. Counsel for SRA also requested that Hettinger please confirm that he was not currently soliciting or servicing the accounts of clients that he serviced while employed by SRA.

38. Instead of providing such assurances and confirmation, Hettinger never responded to SRA's cease and desist letter and continued to move SRA clients to Paladin.

39. Paladin was aware of, and benefitted from, Hettinger's plans to violate his contractual obligations and to compete unfairly and unlawfully with SRA.

40. Paladin and Hettinger devised a scheme to divert SRA Restricted Client business to Paladin through Kramer, a former SRA Producer whose Restrictive Covenants Agreement with SRA recently expired. However, the former SRA client whose business was diverted through Kramer was in fact a Restricted Client served by Hettinger on behalf of SRA, as he was the SRA Producer who had a material involvement in proposing, selling, quoting, placing, providing, and servicing that client while he was employed by SRA, which occurred *after* Kramer had terminated her employment with SRA. Indeed, Kramer had no involvement with that client while she was employed by SRA; and no involvement with that client prior to Hettinger becoming employed by Paladin.

41. Upon information and belief, Paladin has encouraged and facilitated Hettinger to violate his contractual obligations to SRA.

## FIRST CAUSE OF ACTION
### (Breach Of Contract - Agreement)
### (Against Hettinger)

42. SRA repeats and re-alleges the allegations set forth in the paragraphs above as if they are fully set forth herein.

43. Hettinger's SRA Agreement was supported by valuable consideration in the form of employment by SRA. This consideration was in addition to SRA providing Hettinger with training, resources and access to SRA's confidential and proprietary information, trade secrets and contact with SRA's clients.

44. The restrictions in Hettinger's SRA Agreement are reasonable in duration, scope and are narrowly tailored to protect SRA's legitimate business interests in safeguarding its confidential and proprietary information and client and vendor relationships.

45. Hettinger breached the SRA Agreement by, among other things, directly and/or indirectly soliciting SRA's clients to cease doing business with SRA, diverting their business to Hettinger and Paladin, and servicing SRA's clients' with regard to their insurance needs.

46. As a direct and proximate result of Hettinger's wrongful actions, Hettinger caused and will continue to cause for years to come SRA to lose business opportunities, the benefit of client relationships and goodwill developed by SRA at its expense.

47. Hettinger's action have caused, and will continue to cause, SRA immediate and irreparably injury if Hettinger is not restrained.

48. SRA is entitled an injunction prohibiting Hettinger's ongoing breaches of his SRA Agreement with SRA.

49. By reason of the foregoing, Hettinger is additionally liable to SRA for damages in an amount to be determined at trial.

50. SRA is entitled to an award of its costs and attorneys' fees pursuant to Paragraph 18 of the SRA Agreement. (Exhibit A ¶ 18)

## SECOND CAUSE OF ACTION
**(Tortious Interference With Contractual And Prospective Contractual Relations)**
**(Against Hettinger And Paladin)**

51. SRA repeats and re-alleges the allegations set forth in the paragraphs above as if they are fully set forth herein.

52. Hettinger improperly diverted business opportunities away from SRA and towards his new employer, Paladin; solicited SRA's clients to cease conducting business with SRA and instead to divert their business to Hettinger and Paladin; and serviced SRA's clients through Paladin.

53. Hettinger was aware of SRA's contracts with its clients; and Hettinger has procured and intends intentionally to procure the breach of these contracts.

9

Case 2:23-cv-01012-CJW-KEM    Document 1    Filed 06/15/23    Page 9 of 12

54. Hettinger's actions were as an agent and employee of Paladin, were for the benefit of himself and Paladin, and occurred with Paladin's knowledge and authorization.

55. Paladin was aware of Hettinger's SRA Agreement; and Paladin was aware that his SRA Agreement contained restrictive covenants. Despite this knowledge, Paladin allowed, encouraged and facilitated Hettinger to breach his SRA Agreement. Paladin has interfered with Hettinger's SRA Agreement, caused and contributed to Hettinger's breaches of that SRA Agreement. Paladin has benefited, and will continue to benefit from Hettinger's breaches of the SRA Agreement.

56. Because of Defendants' wrongful acts, SRA has lost and will continue to lose for years to come business opportunities, the benefit of client relationships, and goodwill developed by SRA at its expense.

57. Defendants' actions have caused, and will continue to cause, SRA immediate and irreparable harm.

58. SRA has no adequate remedy at law.

59. SRA is therefore entitled to injunctive relief, actual damages, compensatory damages, and punitive damages.

60. **WHEREFORE**, SRA respectfully requests that the Court:

(a) Enter an injunction preventing Hettinger from further violations of the SRA Agreement, for a period of two (2) years following his separation from employment with SRA and tolled pursuant to Paragraph 4 of the SRA Agreement based on the period of breach, including but not limited to:

(i) Enjoining Hettinger from directly or indirectly, offering, selling, soliciting, quoting, placing, providing, renewing or servicing any insurance product or service to, or on behalf of, any "Restricted Client,"

10

(ii) Enjoining Hettinger from taking any action, directly or indirectly, intended to cause, or reasonably likely to cause, a Restricted Client to cease or refrain from doing business with SRA,

(iii) Enjoining Hettinger from soliciting for employment, hiring, retaining, engaging to perform services, or inducing to terminate employment with SRA, any employee or independent contractor of SRA with whom Hettinger had a working relationship during the two (2) years immediately preceding the date upon which Hettinger's employment with SRA terminated, and

(iv) Enjoining Hettinger from using or disclosing any SRA confidential information or trade secrets (as defined in Hettinger's SRA Agreement) to any third party or for Hettinger's benefit;

(b) Enjoining Hettinger and Paladin from tortiously interfering with SRA's business and contractual relations;

(c) Enjoining Paladin from tortiously interfering with and encouraging the breach of Hettinger's SRA Agreement with SRA;

(d) Enjoining Paladin from using or disclosing any SRA confidential information or trade secrets (as defined in Hettinger's SRA Agreement) that Hettinger has shared with Paladin or transferred to any Paladin device or system;

(e) Grant SRA judgment against Defendants for actual, compensatory, and incidental damages in amounts to be determined at trial, together with prejudgment interest;

(f) Award liquidated, punitive or exemplary damages in such other amounts that are sufficient to punish Defendants and to satisfy the jurisprudential goals of specific and general deterrence in light of Defendants' willful and wanton disregard for SRA's rights;

(g) Grant SRA judgment against Defendants for all costs, attorneys' fees and other litigation expenses; and

(h) Grant SRA such other and further relief as the Court deems just, equitable and proper.

Dated this 15th day of June, 2023.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

/s/Christine Bestor Townsend
Christine Bestor Townsend
Iowa State Bar No. #AT0012175
Pabst Boiler House
1243 N. 10th Street, Suite 200
Milwaukee, WI 53205
Telephone: (414) 239.6400
Facsimile: (414) 755.8289
christine.townsend@ogletree.com

**ATTORNEYS FOR PLAINTIFF SRA INSURANCE AGENCY, LLC**